**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

MICHAEL WALSH, ANNE LEGNINI, and ELNA POTTER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

STARBUCKS CORPORATION,

Defendant.

Case No. ________________

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I. NATURE OF THE ACTION ....................................................................1

II. PARTIES ....................................................................4

A. Plaintiffs ....................................................................4

B. Defendant ....................................................................6

III. JURISDICTION AND VENUE ....................................................................7

IV. FACTUAL ALLEGATIONS ....................................................................7

A. Starbucks Seeks to Capitalize on the Protein Craze ....................................................................7

B. By Starbucks's Own Admissions, the Sugar-Free Products Are Nowhere Near Sugar Free ....................................................................9

C. Starbucks Violates FDA Regulations Regarding the Use of the Term "Sugar-Free" ....................................................................21

D. Starbucks Independently Violates the Mandatory Calorie Disclaimer that the FDA Requires Whenever a "Sugar Free" Claim Is Used ....................................................................22

E. The FDA's Sugar-Free and Calorie Labeling Requirements Apply to Food Served in Starbucks Restaurants ....................................................................23

F. Plaintiffs' Claims Impose Requirements Identical to Federal Requirements and Are Not Preempted ....................................................................24

G. Starbucks's Misrepresentations Were Material, and Plaintiffs Relied Upon the Misrepresentations to Their Detriment ....................................................................25

V. CLASS ACTION ALLEGATIONS ....................................................................27

VI. CAUSES OF ACTION ....................................................................31

COUNT I: VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT WASH. REV. CODE § 19.86, *ET SEQ.* ....................................................................31

COUNT II: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (UNLAWFUL PRONG) CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* ....................................................................33

COUNT III: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (UNFAIR PRONG) CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* ....................................................................34



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

COUNT IV: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (FRAUDULENT PRONG) AND FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE §§ 17200, 17500, *ET SEQ*. ....35

COUNT V: VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT CAL. CIV. CODE § 1750, *ET SEQ*. ....37

COUNT VI: VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350 ....39

COUNT VII: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ....40

COUNT VIII: UNJUST ENRICHMENT/QUASI-CONTRACT (PLEADED IN THE ALTERNATIVE, ON BEHALF OF THE STATE SUBCLASSES) ....41

PRAYER FOR RELIEF ....42

DEMAND FOR JURY TRIAL ....43



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## I. NATURE OF THE ACTION

1. This is a consumer class action against Starbucks Corporation ("Starbucks" or "Defendant"), arising from Starbucks's sale, marketing, and labeling of a line of "Protein Beverages" that Starbucks names and markets as "Sugar-Free," but which, in fact, contain substantial amounts of sugar.

2. As the FDA states in its regulations regarding sugar-content claims, the term "sugar free" represents to consumers that a food or beverage contains no sugars or sweeteners.[1] Starbucks sells eight beverages whose names begin with the words "Sugar-Free," even though they contain between 13 and 21 grams of sugar per venti-size serving. No reasonable consumer would understand a beverage named "Sugar-Free" to contain 13 to 21 grams of sugar per serving.

3. Starbucks's deception is twofold: in addition to falsely calling its beverages "Sugar-Free," Starbucks also fails to include an FDA-required disclaimer regarding their calorie content. The FDA requires such disclaimers specifically because consumers believe that a beverage that is marketed as "Sugar-Free" is also likely to have reduced calories.[2]

4. This case is about false and misleading product names. It is not about missing nutritional information. Plaintiffs do not contend that Starbucks was required to print sugar content on its menus or on its beverages. Nor do Plaintiffs seek to impose any disclosure obligation on Starbucks beyond what federal law already requires. Instead, Plaintiffs claim that Starbucks's use of the term "Sugar-Free" at the beginning of eight product names is false and misleading, that federal law prohibits Starbucks from calling beverages Sugar-Free when they contain more than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, and that state consumer protection laws forbid Starbucks from selling these products under their false and misleading names.

5. The Starbucks products at issue include the *Sugar-Free Vanilla Protein Latte*, the *Sugar-Free Caramel Protein Latte*, the *Sugar-Free Vanilla Protein Matcha*, the *Sugar-Free Caramel Protein Matcha*, the *Iced Sugar-Free Vanilla Protein Latte*, the *Iced Sugar-Free Caramel*

[1] *See generally* 21 C.F.R. § 101.60(c)(1).

[2] *Id.*



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Protein Latte*, the *Iced Sugar-Free Vanilla Protein Matcha*, and the *Iced Sugar-Free Caramel Protein Matcha* (collectively, the "Sugar-Free Products").[3] Starbucks displays these names in its marketing, its menus, its website, its mobile ordering application, and in third-party delivery service applications including, but not limited to, DoorDash, Uber Eats, and Grubhub (collectively, the "Third-Party Applications").

6. Under 21 C.F.R. § 101.60(c)(1), companies can only claim that products are "sugar free" if they contain less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving (and which meet other requirements—which the Sugar-Free Products do not). This requirement applies to food and beverages served in restaurants like Starbucks by the express terms of 21 C.F.R. § 101.13(q)(5).

7. The Sugar-Free Products all contain milk, which contains lactose, a naturally occurring sugar.

8. Due to this lactose, the Sugar-Free Products contain approximately 13–21 grams of sugar per venti serving—several times more than the FDA allows for truly sugar-free beverages—as set forth in the table below.

| **Product** | **Venti Sugar[4]** | **360 mL RACC** | **How Many Times Permissible Amount of Sugar?** |
|---|---|---|---|
| Sugar-Free Vanilla Protein Latte | 19g | 11.57g | 23.1x |
| Sugar-Free Caramel Protein Latte | 19g | 11.57g | 23.1x |
| Sugar-Free Vanilla Protein Matcha | 20g | 12.18g | 24.4x |
| Sugar-Free Caramel Protein Matcha | 21g | 12.79g | 25.6x |
| Iced Sugar-Free Vanilla Protein Latte | 13g | 6.59g | 13.2x |
| Iced Sugar-Free Caramel Protein Latte | 13g | 6.59g | 13.2x |
| Iced Sugar-Free Vanilla Protein Matcha | 17g | 8.62g | 17.2x |
| Iced Sugar-Free Caramel Protein Matcha | 17g | 8.62g | 17.2x |

[3] *See* https://www.starbucks.com/menu/protein/protein-beverages (last visited Oct. 1, 2026).

[4] Per "venti"-sized beverage (20 oz for hot drinks, 24 oz for iced drinks). *See* https://www.starbucks.com/menu/product/28501/hot (Sugar-Free Vanilla Protein Latte); https://www.starbucks.com/menu/product/34819/hot (Sugar-Free Caramel Protein Latte); https://www.starbucks.com/menu/product/28505/hot (Sugar-Free Vanilla Protein Matcha); https://www.starbucks.com/menu/product/34817/hot (Sugar-Free Caramel Protein Matcha); https://www.starbucks.com/menu/product/28500/iced (Iced Sugar-Free Vanilla Protein Latte); https://www.starbucks.com/menu/product/34818/iced (Iced Sugar-Free Caramel Protein Latte); https://www.starbucks.com/menu/product/28504/iced (Iced Sugar-Free Vanilla Protein Matcha); https://www.starbucks.com/menu/product/34816/iced (Iced Sugar-Free Caramel Protein Matcha) (each last visited Oct. 1, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

9. The figures in the third column are the most relevant ones to this complaint. Under 21 C.F.R. § 101.13(p)(1), whether a food qualifies for a nutrient content claim—like "sugar free"—is determined by how much of the nutrient is present per "reference amount customarily consumed" ("RACC"). Under 21 C.F.R. § 101.12(b), the reference amount customarily consumed for these coffee beverages is 360 milliliters (12 fluid ounces).[5] Each of the Sugar-Free Products contains at least 13 times the 0.5-gram maximum per RACC.

10. Even under a more conservative 240 milliliters RACC more appropriate for milk-based instant breakfasts or meal replacements,[6] the Sugar-Free Products would still exceed the legal sugar limit by 9 to 17 times.

11. The 21 grams of sugar contained in a venti Sugar-Free Caramel Protein Matcha is roughly equal to five teaspoons of sugar. This is almost as much total sugar as is contained in a standard Kit Kat bar.[7]

12. By naming its beverages "Sugar-Free," Starbucks makes a specific, quantitative, and verifiable claim about the nature of these beverages. Consumers rely upon such claims when deciding to purchase such products. Here, these claims are false.

13. A recent food and health survey determined that 75% of Americans are trying to reduce or eliminate their sugar consumption.[8]

14. Starbucks's use of the term "Sugar-Free" as part of the official product name for each of the Sugar-Free Products is a deliberate attempt to capitalize on the nutritional preferences of 75% of Americans. Furthermore, this usage is knowingly false, misleading, and deceptive to reasonable consumers nationwide and violates the consumer protection statutes of Washington,

---

[5] *See* 21 C.F.R. § 101.12(b) tbl.2 (2026). *See also* U.S. Food & Drug Admin., Reference Amounts Customarily Consumed: List of Products for Each Product Category, Guidance for Industry, 83 Fed. Reg. 9000 (Mar. 2, 2018) (identifying "coffee or tea, ready-to-drink (e.g., ice coffee, mocha, cappuccino)" as falling within the 360 mL category).

[6] *See* 21 C.F.R. § 101.12(b) tbl.2 (2026).

[7] *See generally* Kit Kat Milk Chocolate Candy Bar product page, available at https://www.thehersheycompany.com/content/hersheyland/en-us/home/products/kit-kat-milk-chocolate-candy-bar-1-5-oz.html (stating that a 1.5 oz Kit Kat bar contains 23g of sugar) (last visited Oct. 1, 2026).

[8] 2025 IFIC Food & Health Survey, at 67, available at https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (last visited Oct.1, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

California, and New York.

15. Plaintiffs and members of the proposed classes could have purchased Starbucks's products that were not represented to be sugar free. The fact that they purchased "sugar free" versions indicates the materiality of that label. Plaintiffs were injured by paying for products that were not as represented, and at a minimum would have paid far less than they did.

16. Plaintiffs suffered injury in fact in the form of concrete and particularized economic injury because they paid for products that did not conform to Starbucks's "Sugar-Free" representation: Plaintiffs either would not have purchased the products at all or would have paid less for them. That injury is fairly traceable to Starbucks's use of the misleading "Sugar-Free" designation in the products' names. The injury is redressable by an award of damages and by injunctive relief requiring Starbucks to cease the challenged naming practice.

17. Plaintiffs bring this action individually and, in the first instance, on behalf of a proposed Nationwide Class of United States purchasers, seeking damages, restitution, and injunctive relief under the Washington Consumer Protection Act, Wash. Rev. Code § 19.86*, et seq.*, because Starbucks is headquartered in Washington and the naming, labeling, and marketing decisions challenged herein were made at, and disseminated from, Starbucks's Seattle headquarters. In the alternative, and should the Court decline to certify the Nationwide Class under Washington law, Plaintiffs bring this action on behalf of proposed statewide subclasses of consumers in California, New York, and Washington, seeking damages, restitution, and other relief under the laws of their respective states.

## II. PARTIES

### A. Plaintiffs

18. Plaintiff Michael Walsh ("California Plaintiff") is, and at all relevant times was, a citizen and resident of Whittier, California. From approximately June 2026 through August 2026, during the applicable limitations period, California Plaintiff purchased one or more of the Sugar-Free Products from Starbucks locations in Whittier, California for personal, family, or household use. Before purchasing, California Plaintiff understood the "Sugar-Free" portion of the product's name, i.e., "Sugar-Free Vanilla Protein Latte," to mean that the beverage contained no sugar.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

California Plaintiff did not see, and was not shown, any statement of the beverage's sugar content before completing the purchase. California Plaintiff purchased the beverage in reliance on Starbucks's representation that the product was "Sugar-Free." Had California Plaintiff known that the product in fact contained approximately 13–21 grams of sugar per venti serving, California Plaintiff would not have purchased the product or would have paid substantially less for it. California Plaintiff is a regular Starbucks customer who continues to patronize Starbucks locations. California Plaintiff intends to purchase protein beverages from Starbucks in the future and would purchase the Sugar-Free Products if they were truthfully labeled as containing no sugar. Because Starbucks continues to use the misleading "Sugar-Free" designation, California Plaintiff cannot rely on Starbucks's product names to make informed purchasing decisions and therefore faces a real and immediate threat of being deceived again by the same practice.

19. Plaintiff Anne Legnini ("New York Plaintiff") is, and at all relevant times was, a citizen and resident of Montgomery, New York. From approximately September 2025 through August 2026, during the applicable limitations period, New York Plaintiff purchased one or more of the Sugar-Free Products from Starbucks locations in Montgomery, New York for personal, family, or household use. Before purchasing, New York Plaintiff understood the "Sugar-Free" portion of the product's name, i.e., "Sugar-Free Vanilla Protein Latte," to mean that the beverage contained no sugar. New York Plaintiff did not see, and was not shown, any statement of the beverage's sugar content before completing the purchase. New York Plaintiff purchased the beverage in reliance on Starbucks's representation that the product was "Sugar-Free." Had New York Plaintiff known that the product in fact contained approximately 13–21 grams of sugar per venti serving, New York Plaintiff would not have purchased the product or would have paid substantially less for it. New York Plaintiff is a regular Starbucks customer who continues to patronize Starbucks locations. New York Plaintiff intends to purchase protein beverages from Starbucks in the future and would purchase the Sugar-Free Products if they were truthfully labeled as containing no sugar. Because Starbucks continues to use the misleading "Sugar-Free" designation, New York Plaintiff cannot rely on Starbucks's product names to make informed purchasing decisions and therefore faces a real and immediate threat of being deceived again by



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the same practice.

20. Plaintiff Elna Potter ("Washington Plaintiff") is, and at all relevant times was, a citizen and resident of Kelso, Washington. From approximately April 2026 through September 2026, during the applicable limitations period, Washington Plaintiff purchased one or more of the Sugar-Free Products from Starbucks locations in Longview, Washington for personal, family, or household use. Before purchasing, Washington Plaintiff understood the "Sugar-Free" portion of the product's name, i.e., "Sugar-Free Caramel Protein Latte," to mean that the beverage contained no sugar. Washington Plaintiff did not see, and was not shown, any statement of the beverage's sugar content before completing the purchase. Washington Plaintiff purchased the beverage in reliance on Starbucks's representation that the product was "Sugar-Free." Had Washington Plaintiff known that the product in fact contained approximately 13–21 grams of sugar per venti serving, Washington Plaintiff would not have purchased the product or would have paid substantially less for it. Washington Plaintiff is a regular Starbucks customer who continues to patronize Starbucks locations. Washington Plaintiff intends to purchase protein beverages from Starbucks in the future and would purchase the Sugar-Free Products if they were truthfully labeled as containing no sugar. Because Starbucks continues to use the misleading "Sugar-Free" designation, Washington Plaintiff cannot rely on Starbucks's product names to make informed purchasing decisions and therefore faces a real and immediate threat of being deceived again by the same practice.

**B. Defendant**

21. Defendant Starbucks Corporation is a corporation organized and existing under the laws of the State of Washington, with its principal executive offices located at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks is, and at all relevant times was, engaged in the business of manufacturing, marketing, distributing, and selling coffee, tea, and other beverages, including the Sugar-Free Products, throughout the United States, including in this District. All decisions concerning the naming, menu presentation, and marketing of the Sugar-Free Products, and the approval of the "Sugar-Free" nutrient content claim for use in those names, were made by Starbucks personnel at its Seattle headquarters and disseminated from this District to every channel



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

in which the Sugar-Free Products are sold nationwide.

## III. JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 proposed class members; and at least one member of a proposed class is a citizen of a state different from Defendant. Starbucks has sold the Sugar-Free Products continuously since September 29, 2025, at prices of approximately $6.00 to $8.00 per beverage, at thousands of Starbucks locations nationwide and via Starbucks's website and mobile application and the Third-Party Applications. On information and belief, sales of the Sugar-Free Products during the class period total well in excess of $5,000,000.

23. This Court has personal jurisdiction over Starbucks because it is incorporated in, and maintains its principal place of business in, the State of Washington, rendering Starbucks "at home" in this forum for purposes of general personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

24. Venue is proper in this District under 28 U.S.C. § 1391(b) because Starbucks resides in this District within the meaning of 28 U.S.C. § 1391(c)(2), and because a substantial part of the events giving rise to Plaintiffs' claims, including the design, approval, and centralized dissemination of the product naming and labeling practices at issue, occurred in this District, where Starbucks's headquarters are located.

## IV. FACTUAL ALLEGATIONS

### A. Starbucks Seeks to Capitalize on the Protein Craze

25. On September 2, 2025, Starbucks attempted to capitalize on Americans' desire to increase their protein intake by announcing a new line of Protein Beverages.[9]

26. Starbucks announced this new line of beverages in an attempt to modernize its

---

[9] *See* Press Release, Starbucks Corp., *Starbucks Goes All In on Protein: Announces Arrival of New Protein Lattes and Protein Cold Foam to the Menu on Sept. 29* (Sept. 2, 2025), https:// about. starbucks.com/press/2025/ starbucks-goes-all-in-on-protein-announces-arrival-of-new-protein-lattes-and-protein-cold-foam-to-the-menu/ (emphasis added) (last visited Oct. 1, 2026).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

brand and create new consumer demand. "As we continue to get back to Starbucks, we're focused on modernizing our menu with innovative, relevant, and hype-worthy products that will resonate with our customers," said Tressie Lieberman, Starbucks global chief brand officer. "Our new protein beverages tap into the growing consumer demand for protein in an innovative, premium and delicious way that only Starbucks can deliver."[10]

27. Starbucks initially announced that this new line of beverages would include both unsweetened and sugar-free choices, clearly illustrating its understanding of the difference between those two concepts: "Starbucks new Protein Cold Foams and Lattes will be available at the end of September. They will come in a variety of flavors, *including sugar-free and unsweetened choices* and are designed to support customers looking to add protein to their order."[11]

28. Here, the distinction between "sugar-free" and "unsweetened" is the difference between a lawful description and an unlawful one. Federal law expressly allows "no added sugar," "without added sugar," and "no sugar added" claims on beverages, subject to certain conditions.[12] Despite having multiple accurate and lawful ways to describe these beverages, Starbucks instead chose "Sugar-Free," a term that federal law prohibits for these eight beverages.

29. The announcement of Starbucks's Protein Beverages line came only months after Starbucks CEO Brian Niccol met with the U.S. Department of Health & Human Services regarding the healthiness of Starbucks's menu.[13]

30. Starbucks has publicly represented that its menu is designed to give customers accurate nutritional information on which to base their choices: "Our diverse menu of high-quality foods and beverages empower customers *to make informed nutritional decisions, with transparency on ingredients, calories, and more*. Plus, we keep it real—no high fructose corn

---

[10] *Id.*

[11] *Id.*

[12] 21 C.F.R. § 101.60(c)(2).

[13] *See* Starbucks to Further Align Its Menu with MAHA Initiative, RFK Jr. Says, FOX BUS. (June 19, 2025), https://www.foxbusiness.com/lifestyle/starbucks-further-align-its-menu-maha-initiative-rfk-jr-says (last visited Oct. 1, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

syrup, artificial dyes, flavors, or artificial trans-fats."[14]

31. The high sugar content of Starbucks's beverages has been a problem for the company before. Despite Starbucks's stated commitment to nutritional transparency and its discussions with federal health officials, HHS Secretary Robert F. Kennedy Jr. publicly challenged Starbucks in March 2026 to provide safety data supporting teenagers' consumption of their high-sugar beverages.[15]

**B. By Starbucks's Own Admissions, the Sugar-Free Products Are Nowhere Near Sugar Free**

32. On or about September 29, 2025, Starbucks launched its Protein Beverages line.

33. Starbucks, however, did not follow through on its promise to provide truly sugar-free Protein Beverage options.

34. Starbucks made distinct sugar-content representations regarding Sugar-Free Products in its product launch marketing. Under the heading "Sugar-Free Vanilla Protein Latte," Starbucks described the beverage as containing "no added sugar."[16] Under "Sugar-Free Vanilla Protein Matcha," it described the beverage as being made "without the added sugar."[17] Although these descriptions address whether sugar was added, the product names represent that the finished beverages themselves are sugar-free. Federal regulations separately govern those claims and impose different conditions for their use.[18]

35. Describing a beverage as having no added sugar does not establish that it contains no sugar, nor does it qualify the separate "Sugar-Free" representation in the beverage's name. Even if Starbucks's no-added-sugar descriptions were accurate, the beverages would still contain substantial amounts of naturally occurring milk sugar. Consumers could reasonably understand

---

[14] *Id.* (emphasis added).

[15] CBS News, *RFK Jr. Challenges Dunkin' and Starbucks Over Safety of Sugary Drinks* (Mar. 5, 2026) https://www.cbsnews.com/news/rfk-jr-challenges-dunkin-starbucks-sugary-drinks-safety/ (last visited Oct. 1, 2026).

[16] Starbucks, *Starbucks New Protein Lattes and Cold Foam Drinks Now Available* (Sept. 29, 2025), https://about.starbucks.com/stories/2025/starbucks-new-protein-lattes-and-cold-foam-drinks-now-available/ (last visited Oct. 1, 2026).

[17] *Id.*

[18] *Compare* 21 C.F.R. § 101.60(c)(1), *with* § 101.60(c)(2).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the accompanying descriptions as consistent with the "Sugar-Free" product names, rather than as notice that those names exclude sugar contributed by milk.

36. The image below shows the Sugar-Free Products as they appear in the "Protein Beverages" section of Starbucks's menu on its own website.[19]




37. The two images below show the eight Sugar-Free Products as they appear, alongside other, non-sugar-free beverages, in the "Protein Beverages" section of Starbucks's menu on the DoorDash website.[20] For six of the eight Sugar-Free Products, consumers had a choice of a sugar-free or non-sugar-free version of the same beverage:[21]

---

[19] *See* https://www.starbucks.com/menu/protein/protein-beverages (last visited Oct. 1, 2026).

[20] *See* https://www.doordash.com/store/starbucks-winchester-24675019/19508549/?event_type=autocomplete&pickup=false (last visited Oct. 1, 2026).

[21] The Starbucks website and the Third-Party Applications currently do not advertise full sugar versions of the Sugar-Free Vanilla Protein Matcha or the Iced Sugar-Free Vanilla Protein Matcha. Instead, they advertise a Protein Matcha and an Iced Protein Matcha, which do not have sugar-free analogues.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX






HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX




38. The images below show the eight Sugar-Free Products as they appear, alongside other non-sugar-free beverages, in the "Protein Beverages" section of Starbucks's menu on the Uber Eats website.[22] Again, there are sugar-free and non-sugar-free versions of six of the eight products:

[22] *See* https://www.ubereats.com/store/starbucks-cambridge-center/9HCVts1hQVOmB5-8iITYyQ?diningMode=DELIVERY&surfaceName= (last visited Oct. 1, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX






HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX




39. The two images below show the eight Sugar-Free Products as they appear, alongside other, non-sugar-free beverages, in the "Protein Beverages" section of Starbucks's menu on the GrubHub website. Once again, there are sugar-free and non-sugar-free versions of six of the eight products.[23]

[23] *See* https://www.grubhub.com/restaurant/starbucks-120-broadway-cambridge/11124536 (last visited Oct. 1, 2026).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX






HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX




40. Starbucks's own nutrition information, which a consumer would have to seek out affirmatively, confirms that these drinks contain sugar and that their "Sugar-Free" naming is false.

41. Plaintiffs do not allege that Starbucks was required to display sugar content on its menus or its beverages. Nor do Plaintiffs seek to impose disclosure obligations on Starbucks beyond those already required by federal law. Plaintiffs simply allege that the names of the Sugar-Free Products are false and misleading. The allegations in this subsection support a prosaic proposition: Starbucks cannot defend the false and misleading names of the Sugar-Free Products by claiming that a consumer who went looking beyond these representations could have found the truth elsewhere.[24] In any event, as set forth below, the truth is not readily available when consumers are purchasing the Sugar-Free Products.

[24] *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008) (a defendant may not rely on truthful information elsewhere on a package to cure an affirmative misrepresentation, because reasonable consumers are not "expected to look beyond misleading representations . . . to discover the truth").


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

42. Starbucks generally does not inform consumers of the actual sugar content of the Sugar-Free Products before consumers purchase them.

43. In its physical stores, Starbucks does not display the sugar content of the Sugar-Free Products as part of its visible signage or menus.

44. In the Third-Party Applications, neither Starbucks nor the Third-Party Applications themselves display the sugar content of the Sugar-Free Products as part of their menus or on the product popup pages.

45. At the bottom left of Starbucks's own product page for ordering a venti Sugar-Free Caramel Protein Matcha, in smaller text that is generally cut off by the bottom of the consumer's telephone screen or hidden by the page's persistent footer unless a consumer scrolls down, Starbucks admits that the beverage it calls "Sugar-Free" actually contains 21 grams of sugar.[25]

46. The image below shows a portion of the product page for a Sugar-Free Caramel Protein Matcha as it initially appears when first navigating to it, with the abbreviated nutritional information covered by the website's persistent footer, and with a venti-size selected:




[25] *See* https://www.starbucks.com/menu/product/34817/hot (last visited Oct. 2, 2026).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

47. As shown in this image, the green "Add to Order" button in the lower right side is available for consumers to press while the nutritional information is blocked by the footer.

48. The image below shows the same page, scrolled down so that the footer no longer blocks the small text, abbreviated nutritional information on the lower left side.




49. As shown in this image, this drink is not "Sugar-Free;" it contains 21 grams of sugar.

50. Similarly, Starbucks's own product page for ordering a Sugar-Free Vanilla Protein Matcha admits that a venti contains 20g of sugar, in the same small font similarly cut off by the bottom of the consumer's screen or hidden by the same persistent footer.[26]

51. The image below shows a portion of the product page for the Sugar-Free Vanilla Protein Matcha as it initially appears when first navigating to it, with the small text abbreviated nutritional information covered by the website's persistent footer, and with a venti-size selected.

[26] *See* https://www.starbucks.com/menu/product/28505/hot (last visited Oct. 2, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX




52. As shown in this image, the green "Add to Order" button in the lower right side is available for consumers to press while the nutritional information is blocked by the footer.

53. The image below shows the same page, scrolled down so that the footer no longer blocks the abbreviated nutritional information on the lower left side.




54. As shown in this image, this drink is not "Sugar-Free;" it contains 20g of sugar.

55. The product pages for ordering the other six Sugar-Free Products are materially



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

similar to the pages shown above for the Sugar-Free Caramel Protein Matcha and the Sugar-Free Vanilla Protein Matcha. Each of these pages initially covers the abbreviated nutritional information on the lower left side with the website's persistent footer or cuts it off by the bottom of a consumer's telephone screen. Each page displays the green "Add to Order" button even when the nutritional information is not shown. Each page admits to substantial sugar amounts, contradicting the "Sugar-Free" naming of the beverages.

56. According to the ingredients lists for the Sugar-Free Products, each of them contains milk.[27]

57. Federal law requires ingredients to be listed "in descending order of predominance by weight."[28]

58. Milk is the first ingredient listed for six of the eight Sugar-Free Products: the Sugar-Free Vanilla Protein Latte; the Sugar-Free Caramel Protein Latte; the Sugar-Free Vanilla Protein Matcha; the Sugar-Free Caramel Protein Matcha; the Iced Sugar-Free Vanilla Protein Matcha; and the Iced Sugar-Free Caramel Protein Matcha. This indicates that milk is the most predominant ingredient by weight in each of these drinks.

59. Milk is the second ingredient listed—after ice—in the ingredient lists for the other two Sugar-Free Products: the Iced Sugar-Free Vanilla Protein Latte and the Iced Sugar-Free Caramel Protein Latte. This indicates that milk is the second most predominant ingredient by weight in each of these drinks.

60. The milk listed as an ingredient in each of the Sugar-Free Products contains lactose.

61. This lactose is a sugar.

62. Starbucks knows that the Sugar-Free Products contain milk.

---

[27] *See* https://www.starbucks.com/menu/product/28501/hot/nutrition (Sugar-Free Vanilla Protein Latte); https://www.starbucks.com/menu/product/34819/hot/nutrition (Sugar-Free Caramel Protein Latte); https://www.starbucks.com/menu/product/28505/hot/nutrition (Sugar-Free Vanilla Protein Matcha); https://www.starbucks.com/menu/product/34817/hot/nutrition (Sugar-Free Caramel Protein Matcha); https://www.starbucks.com/menu/product/28500/iced/nutrition (Iced Sugar-Free Vanilla Protein Latte); https://www.starbucks.com/menu/product/34818/iced/nutrition (Iced Sugar-Free Caramel Protein Latte); https://www.starbucks.com/menu/product/28504/iced/nutrition (Iced Sugar-Free Vanilla Protein Matcha); https://www.starbucks.com/menu/product/34816/iced/nutrition (Iced Sugar-Free Caramel Protein Matcha) (last visited Oct. 1, 2026).

[28] 21 C.F.R. § 101.4(a)(1).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

63. Starbucks knows that this milk contains lactose.

64. Starbucks knows that this lactose is a sugar.

65. Starbucks itself classifies this lactose as a sugar, as illustrated by Starbucks's own nutritional information for the Sugar-Free Products, which admits that they contain between approximately 13 and 21 grams of sugar per venti serving.

66. Despite knowing that Sugar-Free Products contain milk, and knowing that this milk contains lactose, and knowing that this lactose is a sugar, and despite actually classifying this lactose as a sugar, Starbucks nonetheless calls these beverages "Sugar-Free."

67. Starbucks calls these beverages "Sugar-Free" because it knows that consumers rely on such representations when deciding what products to purchase.

**C. Starbucks Violates FDA Regulations Regarding the Use of the Term "Sugar-Free"**

68. The regulation governing the term "sugar free" describes the specific consumer understanding on which it rests: "Consumers may reasonably be expected to regard *terms that represent that the food contains no sugars or sweeteners* e.g., 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories."[29] The FDA has thus determined that consumers interpret "sugar free" as both an absolute statement regarding sugar content as well as a representation of reduced calories.

69. The FDA has unambiguously classified lactose as a "sugar" since at least 1993.[30] Lactose is not merely encompassed by the regulatory definition of "total sugars;" it is one of the four substances that the regulation explicitly names as examples: "Total sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."[31]

70. Under FDA regulations, a food or beverage (including the Sugar-Free Products) may be labeled "sugar free," "free of sugar," "no sugar," "zero sugar," or a comparable synonym only if (among other things) it "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii),

---

[29] 21 C.F.R. § 101.60(c)(1) (emphasis added).

[30] *See* 21 C.F.R. § 101.9(c)(6)(ii); 58 Fed. Reg. 2079, 2177 (Jan. 6, 1993).

[31] 21 C.F.R. § 101.9(c)(6)(ii).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

per reference amount customarily consumed and per labeled serving . . . ."[32]

71. In September 2007, the FDA reiterated these requirements in a letter to food manufacturers and distributors, identifying accurate claims regarding the absence of sugar as a regulatory priority and advising that it intended to take appropriate action against products bearing "sugar free" claims that failed to satisfy each requirement of 21 C.F.R. § 101.60(c).[33]

72. Each of the Sugar-Free Products contains greater than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving.

73. Starbucks knows that the Sugar-Free Products contain greater than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving.

74. Despite knowing that the Sugar-Free Products contain greater than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, Starbucks nonetheless calls these drinks Sugar-Free.

### D. Starbucks Independently Violates the Mandatory Calorie Disclaimer that the FDA Requires Whenever a "Sugar Free" Claim Is Used

75. Even if the Sugar-Free Products had less than 0.5 grams of sugar per RACC, Starbucks could not legally call them "sugar free" as Starbucks currently presents them. Section 101.60(c)(1)(iii) permits the term "sugar free" to be used only if the food (A) "is labeled 'low calorie' or 'reduced calorie' or bears a relative claim of special dietary usefulness," or (B) the term "is immediately accompanied, each time it is used, by either the statement 'not a reduced calorie food,' 'not a low calorie food,' or 'not for weight control.'"

76. The FDA specifically emphasized this requirement in its September 2007 letter to food manufacturers and distributors, expressing concern about products bearing "sugar free" claims without the required calorie disclaimer and reminding the industry that the disclaimer, when required, must accompany the claim each time it is used.[34]

---

[32] 21 C.F.R. § 101.60(c)(1)(i).

[33] U.S. Food & Drug Admin., *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims* (Sept. 2007), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-and-fda-dear-manufacturer-letter-regarding-sugar-free-claims (last visited Oct. 1, 2026).

[34] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

77. The Sugar-Free Products are not labeled "low calorie" or "reduced calorie." Nor are they. The Sugar-Free Products range from approximately 270 to 340 calories per venti serving.[35]

78. Upon information and belief, Starbucks does not accompany the term "Sugar-Free" with the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control," anywhere, including on its physical menus, in its mobile application, on its website, or in the Third-Party Applications.

79. Whenever Starbucks uses the term "Sugar-Free" in connection with each of the Sugar-Free Products, therefore, it commits an independent violation of 21 C.F.R. § 101.60(c)(1)(iii). These violations do not depend on the actual sugar content of the beverages, and they exist in addition to the violations described above.

80. The FDA imposed this specific calorie disclaimer requirement because consumers understand the term "sugar free" to be an indication that a product "is low in calories or significantly reduced in calories." 21 C.F.R. § 101.60(c)(1). By using the term without the required disclaimer, Starbucks told consumers not only that the Sugar-Free Products contain no sugar—which is false—but also implied that they are low or reduced in calories—which is also false.

### E. The FDA's Sugar-Free and Calorie Labeling Requirements Apply to Food Served in Starbucks Restaurants

81. Claims regarding the sugar content of a food are only permissible if, among other things, "[t]he claim is made in accordance with the general requirements for nutrient content claims in § 101.13." 21 C.F.R. § 101.60(a)(2).

82. Section 101.13 expressly applies to food served in restaurants: "A nutrient content claim used on food that is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments shall comply with the requirements of this section and the appropriate definition in subpart D of this part." 21 C.F.R. § 101.13(q)(5). Section 101.60 is in subpart D.

---

[35] *See* https://www.starbucks.com/menu/product/28501/hot (stating that the Sugar-Free Vanilla Protein Latte has 270 calories per venti serving) and https://www.starbucks.com/menu/product/34816/iced (stating that the Iced Sugar-Free Caramel Protein Matcha has 340 calories per venti serving) (both last visited Oct. 1, 2026).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

83. The exceptions to this rule are narrow and inapplicable here. No exception excuses a restaurant from the substantive definition of "sugar free" in § 101.60(c)(1).

84. The requirements of 21 C.F.R. § 101.60(c)(1), therefore, apply in full to Starbucks's naming, displaying, marketing, and selling of the Sugar-Free Products.

**F. Plaintiffs' Claims Impose Requirements Identical to Federal Requirements and Are Not Preempted**

85. Federal law prohibits states from implementing "any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21 U.S.C. § 343-1(a)(5). It does not prohibit states from imposing requirements that are identical.

86. Plaintiffs seek to hold Starbucks liable because falsely telling consumers that beverages that contain 13–21 grams of sugar per serving are actually "Sugar-Free" and failing to include required calorie disclaimers violate state laws against unfair trade practices, consumer fraud, false advertising, and other wrongful conduct.

87. As described above, such conduct also violates FDA labeling requirements already in force.

88. California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 110100 *et seq.*, expressly adopts the food-labeling requirements set forth in the Food, Drug, and Cosmetic Act's implementing regulations, including 21 C.F.R. § 101.60(c)(1), as the food-labeling law of the State of California.[36]

89. Plaintiffs do not seek to require Starbucks to add any statement to the Sugar-Free Products' labels that federal law does not already require, or to remove any statement that federal law requires. Plaintiffs request only what 21 C.F.R. § 101.60(c)(1) already commands: that beverages containing 13–21 grams of sugar per serving not be called "Sugar-Free" and that accurate "Sugar-Free" claims be accompanied by required calorie disclaimers.

90. Plaintiffs' claims do not exist "solely by virtue of" the Federal Food, Drug, and

---

[36] *See Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 848 (9th Cir. 2024) ("Because the Sherman Law incorporates all the federal food labeling requirements, it is 'identical' to federal standards and not expressly preempted. It is expressly permitted.").



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Cosmetic Act. *Cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). The obligation not to sell a product under a name that misstates what is in it is a traditional obligation of state consumer-protection, contract, and warranty law that long predates the FDCA and would exist in identical terms if the FDCA had never been enacted. Plaintiffs invoke the federal regulations as evidence that the representation is false and material and that Starbucks knew it—not as the source of Starbucks's duty. Plaintiffs do not seek to enforce the FDCA, and no relief sought in this action depends on the FDCA's enforcement provisions. *See* 21 U.S.C. § 337(a). Plaintiffs' claims are likewise unaffected by *Monsanto Co. v. Durnell*, 609 U.S. 371 (2026). *Durnell* addressed a state-law claim premised on the absence of a warning that the Environmental Protection Agency had affirmatively determined was not required, on a pesticide label the agency had reviewed and approved under a statutory pre-approval regime. There is no analogous regime here. The FDA does not review or approve restaurant menu item names. Starbucks holds no FDA approval, permit, or clearance for the names of the Sugar-Free Products. The FDA has made no determination that a beverage containing 13 to 21 grams of sugar per serving may be called "Sugar-Free." And 21 C.F.R. § 101.60(c)(1) is an affirmative federal prohibition on Starbucks's conduct, rather than an agency decision declining to require something further. For the same reasons, no purpose would be served by referring any question in this action to the FDA. The agency already spoke on this issue, 33 years ago: lactose is named as a sugar in FDA regulations. 21 C.F.R. § 101.9(c)(6)(ii). Unlike allulose—the subject of a prior enforcement-discretion guidance and a contemplated rulemaking—lactose is the subject of no pending FDA proceeding, no guidance, and no announced reconsideration. There is no unresolved question of agency expertise for this Court to await.

**G. Starbucks's Misrepresentations Were Material, and Plaintiffs Relied Upon the Misrepresentations to Their Detriment**

91. In *Franco v. Chobani, LLC*, 184 F.4th 599, 606–07 (7th Cir. 2026), the Seventh Circuit recently held that allulose—a sugar encompassed by 21 C.F.R. § 101.9(c)(6)(ii) but *not* among the substances specifically named in that regulation—is a "sugar" for purposes of the "sugar-free" rule, and that a complaint alleging a product was sold as "sugar free" while containing



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

allulose plausibly alleged consumer deception.[37]

92. Lactose's regulatory and scientific status as a sugar is even clearer. It is one of the four substances that the FDA regulation expressly enumerates as a sugar.[38] It is a disaccharide "containing two monosaccharides with the elimination of a water molecule with the general chemical structure C12H22O11."[39] It has the ordinary metabolic properties of dietary sugar.[40] And it measurably affects blood glucose after consumption.[41]

93. The sugar content of a beverage is a material fact to reasonable consumers, especially the health-conscious and fitness-oriented, whom Starbucks is currently targeting with new protein beverage options.[42]

94. Starbucks's decision to incorporate "Sugar-Free" into the names of the Sugar-Free Products was calculated to attract consumers seeking to reduce or avoid sugar. Starbucks prominently used that designation in its product launch announcement, identifying the "Sugar-Free Vanilla Protein Matcha" and "Sugar-Free Vanilla Protein Latte" as distinct offerings alongside its other protein beverages.[43] By making the claimed absence of sugar part of the Sugar-Free Products' names, Starbucks presented that specific characteristic as a reason for consumers to select those beverages over competing options. Starbucks intended this false designation to influence purchasing decisions concerning the very nutritional attribute it purported to describe.

---

[37] *See id.* at 607 ("The Francos have alleged that consumers were fooled by Chobani's labels, *and given the absolute promise on Chobani's products (sugar free)*, we do not find that allegation implausible.") (emphasis added).

[38] 21 C.F.R. § 101.9(c)(6)(ii).

[39] Julie E. Holesh, Sanah Aslam & Andrew Martin, *Physiology, Carbohydrates*, StatPearls (last updated May 12, 2023), https://www.ncbi.nlm.nih.gov/books/NBK459280/ (last visited Oct. 2, 2026).

[40] *Id.* (listing lactose as an example of a simple carbohydrate that is "easily . . . utilized for energy, causing a rapid rise in blood sugar and insulin secretion from the pancreas").

[41] *Id.*

[42] *Cf.* Press Release, Starbucks, *Starbucks continues to go all in on protein with new bottled Coffee & Protein beverages* (Feb. 26, 2026), https://about.starbucks.com/stories/2026/starbucks-continues-to-go-all-in-on-protein-with-new-bottled-coffee-protein-beverages/ (quoting Starbucks's senior director of brand marketing stating that the new beverage line, which the release describes as including "zero-sugar" options, is designed to meet consumer demand for "wellness solutions") (last visited Oct. 1, 2026).

[43] Starbucks, *Starbucks New Protein Lattes and Cold Foam Drinks Now Available* (Sept. 29, 2025), https://about.starbucks.com/stories/2025/starbucks-new-protein-lattes-and-cold-foam-drinks-now-available (last visited Oct. 1, 2026).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

95. Starbucks's own admissions confirm that it knows that nutritional characteristics influence its customers' purchasing decisions. In March 2026, Starbucks's Regulatory & Scientific Affairs Lead Scientist explained that customers increasingly tailor their beverages to their nutritional preferences, including by reducing sweetness or adding protein, and specifically identified options for customers seeking beverages with no added sugar.[44] Starbucks thus recognizes that consumers select beverages based on their dietary objectives and markets particular offerings to meet those objectives. The "Sugar-Free" product naming appeals directly to consumers for whom sugar content matters.

96. The International Food Information Council—a nonprofit organization funded by the food and beverage industry—reported in its 2025 Food & Health Survey that 63 percent of Americans are concerned about the amount of sugar in their diet and that 75 percent of Americans are trying to reduce or eliminate it.[45]

97. In addition, consumers living with diabetes often track the sugars provided by milk because they can affect blood glucose levels.[46]

98. Plaintiffs and members of the proposed classes reasonably relied on Starbucks's "Sugar-Free" product names when deciding whether to purchase the Sugar-Free Products that they otherwise would not have purchased, would have purchased less often, or would only have purchased at a lower price, had they known the truth. These excess purchases or the total price premium are capable of measurement on a class-wide basis through accepted economic methods.

## V. CLASS ACTION ALLEGATIONS

99. As their primary class theory, and pursuant to Federal Rule of Civil Procedure

---

[44] Kate Schenk, *Empowering Customers to Personalize Their Starbucks Experience*, Starbucks (Mar. 12, 2026), https://about.starbucks.com/press/2026/empowering-customers-to-personalize-their-starbucks-experience/ (last visited Oct. 1, 2026).

[45] 2025 IFIC Food & Health Survey, pp. 66–67, available at https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (finding that 75% of Americans are seeking to reduce or eliminate their sugar intake) (last visited Oct. 1, 2026).

[46] *See generally*, Andrew Reynolds & Joanna Mitri, Dietary Advice for Individuals with Diabetes, in Endotext (Kenneth R. Feingold et al. eds., MDText.com, Inc. 2024), https://www.ncbi.nlm.nih.gov/books/NBK279012/ (identifying milk, alongside starch/bread and fruit, as one of the primary carbohydrate categories that "affect blood glucose" and require dietary tracking) (last visited Oct. 1, 2026*)*.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

23(a), 23(b)(2), and 23(b)(3), Plaintiffs bring this action on behalf of themselves and all others similarly situated and seek certification of a single Nationwide Class, defined as follows:

> **Nationwide Class**: All persons in the United States who purchased one or more of the Sugar-Free Products for personal, family, or household use from launch through the date of class certification.

100. Washington law governs the claims of the Nationwide Class. Starbucks Corporation is organized under the laws of the State of Washington and maintains its principal place of business and global headquarters at 2401 Utah Avenue South, Seattle, Washington. On information and belief, the decisions to name, label, market, and sell the Sugar-Free Products using the term "Sugar-Free"—without the required caloric disclaimer—and to approve that nutrient-content claim for use in the beverages' official names, were made by Starbucks personnel at its Seattle headquarters and disseminated from Washington to every channel through which the Sugar-Free Products are sold nationwide. Washington, therefore, has the most significant relationship to the claims of the Nationwide Class under the Restatement (Second) of Conflict of Laws and principles of governmental-interest analysis, and application of the Washington Consumer Protection Act to the Nationwide Class is consistent with due process.

101. Plaintiffs recognize that certain courts, applying California choice-of-law rules, have declined to certify nationwide classes under the consumer-protection law of a defendant's home state where the law of each class member's state of purchase or residence was found to have an equal or greater interest in the transaction. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). Plaintiffs plead the Nationwide Class in the first instance notwithstanding *Mazza* because, unlike the multi-state advertising campaign at issue in that case, the conduct challenged here—the naming and marketing of the Sugar-Free Products—was uniform nationwide, was conceived and approved in Washington, and did not vary by state. Furthermore, certification of a single, uniformly governed Nationwide Class avoids the manageability and predominance concerns that animated *Mazza*.

102. In the alternative, and should the Court decline to certify the Nationwide Class under Washington law, Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the following State Subclasses, each governed by the consumer-protection statute of the respective state:

> **State Subclasses**: California Subclass, New York Subclass, and Washington Subclass: All persons who purchased one or more of the Sugar-Free Products in California, New York, or Washington, respectively, for personal, family, or household use from launch through the date of class certification.

103. Excluded from the Nationwide Class and the State Subclasses are Starbucks, its officers, directors, and employees; any entity in which Starbucks has a controlling interest; the judge to whom this action is assigned and members of the judge's immediate family; and Plaintiffs' counsel.

104. The Classes are ascertainable and governed by objective criteria. Furthermore, upon information and belief, Starbucks maintains transaction-level records identifying the beverage purchased along with the date and location of purchase.

105. The eight Sugar-Free Products are substantially similar for purposes of Plaintiffs' claims. Each bears the same "Sugar-Free" designation as the leading element of its name. Each is displayed in the same "Protein Beverages" menu sections and sold through the same channels. Each derives its sugar from the same source, the milk it contains. Each contains far more than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving. And Starbucks omits the calorie disclosure required by 21 C.F.R. § 101.60(c)(1)(iii) for each beverage. The misrepresentation alleged is identical across all eight Sugar-Free Products.

106. **Numerosity.** The members of the Nationwide Class and each State Subclass are so numerous that joinder of all members is impracticable. Upon information and belief, Starbucks has sold the Sugar-Free Products online and at thousands of store locations nationwide, including hundreds of locations in California, New York, and Washington, resulting in many thousands of individual class members in each proposed class and subclass.

107. **Commonality.** Common questions of law and fact exist as to all class members, including, without limitation: (a) whether the Sugar-Free Products contain sugar in amounts inconsistent with a "sugar free" nutrient-content claim under 21 C.F.R. § 101.60(c)(1); (b) whether Starbucks's use of the term "Sugar-Free" in the names of the Sugar-Free Products is false,



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

deceptive, or misleading to reasonable consumers; (c) whether Starbucks used the term "Sugar-Free" without the disclaimer required by 21 C.F.R. § 101.60(c)(1)(iii); (d) whether a price premium attributable to the "Sugar-Free" naming can be measured on a class-wide basis; and (e) whether Plaintiffs and class members are entitled to injunctive relief, damages, restitution, or other relief as a result.

108. **Typicality.** Plaintiffs' claims are typical of the claims of the class and subclass members they seek to represent, as all such claims arise from the same uniform course of conduct by Starbucks and are based on the same legal theories.

109. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel who are experienced in complex class action and consumer protection litigation, and Plaintiffs have no interests antagonistic to those of the Classes.

110. **Rule 23(b)(2).** Starbucks has acted, and refused to act, on grounds generally applicable to the Nationwide Class, making final injunctive relief appropriate with respect to the Nationwide Class as a whole, including an order requiring Starbucks to cease using the term "Sugar-Free" in the names of the Sugar-Free Products unless and until the beverages contain no sugar.

111. **Rule 23(b)(3).** Common questions of law and fact predominate over any questions affecting only individual members of the Nationwide Class or, in the alternative, each State Subclass. The alleged misrepresentation is embedded in the product names themselves and is identical across all sales channels, all locations, and all class members. Therefore, there is no variation in the content of the representation that would give rise to individualized issues. The core liability questions—whether "Sugar-Free" is false, whether it violates 21 C.F.R. § 101.60(c)(1), whether it is material to reasonable consumers, and whether Starbucks failed to apply the required calorie disclaimer—are answerable on a class-wide basis through common proof. A class action is superior to other available methods because individual damages are relatively modest, approximately $6.00 to $8.00 per beverage, making individual litigation economically impractical; a class action is the only realistic means of vindicating these claims. Count I, below, is asserted on behalf of the Nationwide Class or, in the alternative, on behalf of the Washington Subclass, and



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Counts II through VIII, below, are each asserted in the alternative on behalf of the applicable State Subclass, pursuant to Federal Rule of Civil Procedure 23(b)(3).

112. Should Starbucks discontinue or rename the Sugar-Free Products after the filing of this action, that voluntary cessation would not moot Plaintiffs' claims for injunctive and declaratory relief, and would not affect Plaintiffs' claims for damages, restitution, and disgorgement arising from sales already made.

## VI. CAUSES OF ACTION

### COUNT I:

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

**Wash. Rev. Code § 19.86, *et seq*.**

**(On Behalf of the Nationwide Class and, in the Alternative, on Behalf of the Washington Subclass)**

113. Plaintiffs repeat and reallege each allegation set forth above as if fully set forth herein.

114. Plaintiffs bring this Count individually and on behalf of the Nationwide Class. In the alternative, and should the Court decline to certify the Nationwide Class under Washington law, Washington Plaintiff Elna Potter brings this claim on behalf of herself and the Washington Subclass.

115. Washington law governs the claims of the Nationwide Class and, in the alternative, the Washington Subclass for the reasons set forth in the Class Action Allegations above. Starbucks is headquartered in Washington and the naming, labeling, and marketing decisions challenged in this action were made at, and disseminated from, Starbucks's Seattle headquarters. Washington has the most significant relationship to the claims of the Nationwide Class, and application of the Washington Consumer Protection Act to the Nationwide Class is consistent with due process.

116. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, prohibits "unfair or deceptive acts or practices" in the conduct of any trade or commerce.

117. Starbucks is a "person" within the meaning of Wash. Rev. Code § 19.86.010(1) and engages in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2) by naming, labeling, marketing, distributing, and selling the Sugar-Free Products to consumers



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

throughout the United States, including in Washington.

118. Starbucks engaged in an unfair and deceptive act or practice by uniformly naming the Sugar-Free Products "Sugar-Free" in its stores, on menus, on its website, in its mobile application, and in the Third-Party Applications, because the beverages in fact contain approximately 13–21 grams of sugar per venti serving and do not meet the requirements for that nutrient-content claim under 21 C.F.R. § 101.60(c)(1).

119. This uniform misrepresentation was material to reasonable consumers nationwide, was likely to mislead consumers acting reasonably under the circumstances and was not cured by any disclaimer or qualifying disclosure.

120. Starbucks's conduct occurred in the course of its business and affected the public interest within the meaning of Wash. Rev. Code § 19.86.093. Under *Hangman Ridge Training Stables*, *Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778 (1986), the public-interest element is satisfied where challenged conduct is committed in the course of the defendant's business, is part of a pattern or generalized course of conduct, and is directed at or affects the consuming public. Starbucks applied the "Sugar-Free" naming uniformly to all eight products, sold them through multiple channels at thousands of locations, and directed the practice to potentially millions of consumers, establishing the requisite public-interest impact.

121. Plaintiffs and the other members of the Nationwide Class, and, in the alternative, the Washington Subclass, relied on Starbucks's "Sugar-Free" naming in deciding to purchase the Sugar-Free Products and were induced by that naming to purchase beverages they otherwise would not have purchased, or to pay a price premium attributable to the "Sugar-Free" representation.

122. As a direct and proximate result of Starbucks's unfair and deceptive acts and practices, Plaintiffs and the Nationwide Class and, in the alternative, the Washington Subclass, suffered injury to property within the meaning of Wash. Rev. Code § 19.86.090, in the form of the purchase price, or a price premium, paid for the Sugar-Free Products. This overpayment is measurable on a class-wide basis through common proof, including pricing and transaction data and accepted economic methodologies isolating the portion of price attributable to the "Sugar-Free" representation.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

123. Plaintiffs and the Nationwide Class and, in the alternative, the Washington Subclass, are entitled to actual damages, treble damages to the extent permitted by Wash. Rev. Code § 19.86.090, injunctive relief, and reasonable attorneys' fees and costs.

**COUNT II:**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(Unlawful Prong) Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the California Subclass)**

124. California Plaintiff Michael Walsh repeats and realleges each allegation set forth above as if fully set forth herein.

125. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., prohibits any "unlawful, unfair or fraudulent business act or practice." A business practice is "unlawful" under the UCL if it violates any other law, including the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 110100 *et seq*., which adopts the food-labeling requirements of 21 C.F.R. § 101.60(c)(1) into state law.

126. As alleged above, the Sugar-Free Products are named and labeled "Sugar-Free" without meeting the requirements of 21 C.F.R. § 101.60(c)(1). This constitutes an unlawful business practice under the UCL, independent of whether any reasonable consumer was in fact deceived.

127. As alleged above, the Sugar-Free Products also lack the calorie disclaimer mandated by 21 C.F.R. § 101.60(c)(1)(iii). This failure also constitutes an unlawful business practice under the UCL, independent of whether any reasonable consumer was in fact deceived.

128. Starbucks's conduct is unlawful under the UCL because it violates, independently and in combination: (a) 21 C.F.R. § 101.60(c)(1)(i), as adopted by Cal. Health & Safety Code §§ 110100, 110660, 110665, and 110760, because the Sugar-Free Products contain more than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving; (b) 21 C.F.R. § 101.60(c)(1)(iii), because the term "Sugar-Free" is used without the required "not a low calorie food," "not a reduced calorie food," or "not for weight control" disclaimer; (c) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.; and (d) the Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a). Subparagraphs (c) and (d) are each an independent predicate arising


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

under California law.

129. As a direct and proximate result of Starbucks's unlawful conduct, California Plaintiff and the California Subclass have suffered injury-in-fact and lost money, in the form of the purchase price, or a price premium, paid for the Sugar-Free Products.

130. California Plaintiff and the California Subclass lack an adequate remedy at law for the equitable relief sought under this Count. This Count rests on violations of California's Sherman Food, Drug, and Cosmetic Law, which affords no private right of action of its own, and can be remedied only through the equitable relief the Unfair Competition Law provides. In addition, California Plaintiff and the California Subclass would like to purchase sugar-free beverages in the future but are likely to experience future harm because Starbucks's representations cannot be trusted. Money damages, even if fully recovered, would not require Starbucks to cease naming and marketing the Sugar-Free Products as "Sugar-Free" going forward. Only the injunctive relief the False Advertising Law and the Unfair Competition Law provide can prevent that ongoing and future harm.

131. California Plaintiff and the California Subclass are entitled to restitution and injunctive relief under Cal. Bus. & Prof. Code § 17203.

**COUNT III:**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(Unfair Prong) Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the California Subclass)**

132. California Plaintiff Michael Walsh repeats and realleges each allegation set forth above as if fully set forth herein.

133. The "unfair" prong of the UCL prohibits business practices that offend an established public policy, or that are immoral, unethical, oppressive, or unscrupulous and cause substantial injury to consumers that is not outweighed by any countervailing benefit and that consumers could not reasonably have avoided.

134. Starbucks's practice of naming and marketing the Sugar-Free Products as "Sugar-Free," notwithstanding their actual sugar content, is within the scope of the legislatively declared policy embodied in 21 C.F.R. § 101.60(c)(1) and the Sherman Law, which prohibit exactly this


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

practice.

135. The harm to consumers from Starbucks's practice is substantial and it has no offsetting utility. Starbucks could have named the Sugar-Free Products accurately, at no cost to any legitimate business interest. Consumers could not reasonably have avoided this harm, since the product name itself is the representation at issue, and consumers are entitled to rely on it without independently verifying Starbucks's own regulatory compliance.

136. As a direct and proximate result of Starbucks's unfair conduct, California Plaintiff and the California Subclass have suffered injury in fact and lost money, in the form of the purchase price, or a price premium, paid for the Sugar-Free Products.

137. California Plaintiff and the California Subclass lack an adequate remedy at law for the equitable relief sought under this Count. The Consumers Legal Remedies Act contains no analog to the "unfair" prong asserted in this Count, which does not require Starbucks's conduct to fall within any of the specific categories of misrepresentation enumerated in Cal. Civ. Code § 1770(a). In addition, California Plaintiff and the California Subclass would like to purchase sugar-free beverages in the future but are likely to experience future harm because Starbucks's representations cannot be trusted. Money damages, even if fully recovered, would not require Starbucks to cease naming and marketing the Sugar-Free Products as "Sugar-Free" going forward. Only the injunctive relief the False Advertising Law and the Unfair Competition Law provide can prevent that ongoing and future harm.

138. California Plaintiff and the California Subclass are entitled to restitution and injunctive relief under Cal. Bus. & Prof. Code § 17203.

## COUNT IV:

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Fraudulent Prong) AND FALSE ADVERTISING LAW Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq.* (On Behalf of the California Subclass)

139. California Plaintiff Michael Walsh repeats and realleges each allegation set forth above as if fully set forth herein.

140. The "fraudulent" prong of the UCL, and California's False Advertising Law


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, prohibit business acts, practices, and advertising that are likely to deceive members of the public acting reasonably under the circumstances.

141. Starbucks knew, or by the exercise of reasonable care should have known, that the "Sugar-Free" naming of the Sugar-Free Products was untrue and misleading. Cal. Bus. & Prof. Code § 17500. Starbucks formulated the beverages, selected their ingredients, computed and published their nutrition information, and created their names. Starbucks's own published data admits to the sugar content of each of the Sugar-Free Products, and Starbucks's own announcement of the product line illustrated its knowledge of the difference between "sugar-free" and "unsweetened" offerings.

142. Starbucks's use of the term "Sugar-Free" in the names of the Sugar-Free Products is likely to deceive, and did deceive, reasonable consumers, including California Plaintiff, into believing that the Sugar-Free Products contain no, or virtually no, sugar, when in fact each Sugar-Free Product contains from 13–21 grams of sugar per venti serving.

143. Starbucks's "Sugar-Free" representation is material to reasonable consumers, including California Plaintiff, and California Plaintiff relied on that representation in deciding to purchase the Sugar-Free Products.

144. Starbucks's fraudulent conduct is pleaded with particularity. **Who:** Starbucks Corporation, through its marketing, menu-design, and product-naming personnel at its Seattle headquarters. **What:** the "Sugar-Free" designation in the official product names, which represented that the beverages contained no sugar when they in fact contained 13–21 grams of sugar per venti serving. **When:** continuously from the September 29, 2025 product launch through the present. **Where:** on Starbucks's in-store menus at its approximately 16,000 U.S. locations, on its website (starbucks.com), in its mobile ordering application, and in the Third-Party Applications (DoorDash, Uber Eats, and GrubHub). **How:** Starbucks embedded the false "Sugar-Free" claim as the leading element of each product's official name, making it the first nutritional representation consumers encountered when selecting the beverage, while placing the actual sugar content in abbreviated nutritional information hidden below the fold or obscured by persistent website footers.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

145. As a direct and proximate result of Starbucks's fraudulent and deceptive conduct, California Plaintiff and the California Subclass have suffered injury in fact and lost money.

146. California Plaintiff and the California Subclass lack an adequate remedy at law for the injunctive relief sought under this Count. California Plaintiff and the California Subclass would like to purchase sugar-free beverages in the future but are likely to experience future harm because Starbucks's representations cannot be trusted. Money damages, even if fully recovered, would not require Starbucks to cease naming and marketing the Sugar-Free Products as "Sugar-Free" going forward. Only the injunctive relief the False Advertising Law and the Unfair Competition Law provide can prevent that ongoing and future harm.

147. California Plaintiff and the California Subclass are entitled to restitution and injunctive relief under Cal. Bus. & Prof. Code §§ 17203, 17535.

**COUNT V:**

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the California Subclass)**

148. California Plaintiff Michael Walsh repeats and realleges each allegation set forth above as if fully set forth herein.

149. The Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, prohibits unfair methods of competition and unfair or deceptive acts or practices undertaken in a transaction intended to result, or which results, in the sale of goods to a consumer, including: representing that goods have characteristics that they do not have, Cal. Civ. Code § 1770(a)(5); representing that goods are of a particular standard or quality if they are of another, Cal. Civ. Code § 1770(a)(7); and representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, Cal. Civ. Code § 1770(a)(16).

150. Starbucks's naming and marketing of the Sugar-Free Products as "Sugar-Free," notwithstanding their actual sugar content, violates Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(16).

151. Because these CLRA claims are based on affirmative misrepresentations, they sound in fraud and are pleaded with the particularity required by Rule 9(b). *See Kearns v. Ford*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009). **Who:** Starbucks Corporation, through its marketing, menu-design, and product-naming personnel at its Seattle headquarters. **What:** the "Sugar-Free" designation in the official product names, which represented that the beverages contained no sugar when they in fact contained 13–21 grams of sugar per venti serving. **When:** continuously from the September 29, 2025 product launch through the present. **Where:** on Starbucks's in-store menus at its approximately 16,000 U.S. locations, on its website (starbucks.com), in its mobile ordering application, and in the Third-Party Applications (DoorDash, Uber Eats, and GrubHub). **How:** Starbucks embedded the false "Sugar-Free" claim as the leading element of each product's official name, making it the first nutritional representation consumers encountered when selecting the beverage, while placing the actual sugar content in abbreviated nutritional information hidden below the fold or obscured by persistent website footers.

152. The Sugar-Free Products were purchased by California Plaintiff and the California Subclass for personal, family, or household purposes, and the transactions at issue are "consumer" transactions within the meaning of Cal. Civ. Code § 1761.

153. Pursuant to Cal. Civ. Code § 1782, on October 1, 2026, counsel for California Plaintiff sent notice and demand to Starbucks by certified mail, return receipt requested, and California Plaintiff reserves the right to amend this Complaint to add a claim for damages under the CLRA upon expiration of the thirty (30) day notice period if Starbucks fails to provide appropriate relief.

154. California Plaintiff and the California Subclass are entitled to injunctive relief under the CLRA, and, following expiration of the statutory notice period, to actual and punitive damages, restitution, and attorneys' fees and costs pursuant to Cal. Civ. Code §§ 1780, 1781. No claim for damages under the CLRA is asserted at this time.

155. The affidavit required by Cal. Civ. Code § 1780(d), stating facts showing that this action has been commenced in a proper forum, is filed concurrently herewith.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## COUNT VI:

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350
**(On Behalf of the New York Subclass)**

156. New York Plaintiff Anne Legnini repeats and realleges each allegation set forth above as if fully set forth herein.

157. N.Y. Gen. Bus. Law § 349 (McKinney 2026) prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, and § 350 separately prohibits false advertising in the conduct of any business, trade, or commerce.

158. Starbucks's naming and marketing of the Sugar-Free Products as "Sugar-Free," notwithstanding their actual sugar content, is materially misleading and constitutes a deceptive act or practice and false advertising within the meaning of N.Y. Gen. Bus. Law §§ 349, 350 (McKinney 2026).

159. Starbucks's conduct was consumer-oriented: the "Sugar-Free" naming was directed at the consuming public at large, was displayed uniformly in Starbucks's New York retail locations, its website and mobile application, and the Third-Party Applications, and the transactions at issue occurred in New York.

160. New York Plaintiff and the New York Subclass relied on the "Sugar-Free" naming of the Sugar-Free Products in deciding to purchase them.

161. As a direct and proximate result of Starbucks's deceptive acts and false advertising, New York Plaintiff and the New York Subclass have been injured by paying a price premium or the full price for beverages they otherwise would not have purchased.

162. New York Plaintiff and the New York Subclass are entitled to the relief provided by N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3), including actual damages or the statutory damages provided by those sections, whichever is greater; treble damages for Starbucks's willful and knowing violations, to the maximum extent those sections permit; injunctive relief; and reasonable attorneys' fees.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## COUNT VII:

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
**(On behalf of the State Subclasses)**

163. Plaintiffs repeat and reallege each allegation set forth above as if fully set forth herein.

164. Starbucks is a merchant with respect to the Sugar-Free Products, and a warranty that the Sugar-Free Products were merchantable was therefore implied in each sale.

165. To be merchantable, goods must, among other things, "conform to the promise or affirmations of fact made on the container or label." U.C.C. § 2-314(2)(f), as enacted in each relevant State Subclass jurisdiction, including Cal. Com. Code § 2314(2)(f); N.Y. U.C.C. § 2-314(2)(f) (McKinney 2026); and Wash. Rev. Code § 62A.2-314(2)(f).

166. The Sugar-Free Products are sold to order and are not delivered to the consumer in a package bearing a printed label. The functional equivalent of the container or label for these goods is the menu display through which Starbucks identifies each beverage and by which the consumer selects it—Starbucks's in-store menus, its website, its mobile application, and the Third-Party Applications—together with the cup on which the beverage's identity is recorded.

167. By naming the Sugar-Free Products "Sugar-Free" on Starbucks's menus, website, mobile application, and the Third-Party Applications, Starbucks made an affirmation of fact that the Sugar-Free Products do not conform to; each contains between 13–21 grams of sugar per venti serving, as alleged above. The Sugar-Free Products were therefore not merchantable at the time of sale.

168. Plaintiffs and the State Subclasses purchased the Sugar-Free Products directly from Starbucks, whether in person, through Starbucks's website or mobile application, or through the Third-Party Applications acting as Starbucks's order-taking and delivery agent, satisfying any privity requirement that might otherwise apply to this Count. Starbucks sets the menu, the product names, and the prices displayed in the Third-Party Applications. Starbucks prepares each beverage. And Starbucks receives the purchase price. The Third-Party Applications take orders and deliver beverages on Starbucks's behalf and have no role in naming or formulating them.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

169. On October 1, 2026, prior to the filing of this action, counsel for Plaintiffs sent Starbucks with written notice of the breaches alleged in this Count on behalf of each named Plaintiff and the State Subclasses, in satisfaction of U.C.C. § 2-607(3)(a) and its state-law analogues. Starbucks also had actual knowledge of the nonconformity because Starbucks itself formulated the beverages and published their sugar content. In any event, Starbucks also received notice of the nonconformity by the filing of this action.

170. As a direct and proximate result of Starbucks's breach, Plaintiffs and the Classes did not receive the benefit of the bargain and are entitled to damages, including the purchase price or a price premium paid for the Sugar-Free Products, in an amount to be proven at trial.

**COUNT VIII:**

**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(Pleaded in the Alternative, on Behalf of the State Subclasses)**

171. Plaintiffs repeat and reallege each allegation set forth above as if fully set forth herein and plead this Count in the alternative to the extent any of the foregoing claims is unavailable to a particular member of the State Subclasses.

172. This Count is pleaded as a claim in quasi-contract for restitution. It does not depend on the existence of an enforceable contract between Plaintiffs and Starbucks, and to the extent any jurisdiction does not recognize unjust enrichment as an independent cause of action, Plaintiffs assert it as a remedy for the unlawful and deceptive conduct alleged in the preceding Counts.

173. Because of the conduct alleged above, Starbucks has been unjustly enriched at the expense of Plaintiffs and the State Subclasses, who conferred a benefit on Starbucks in the form of the purchase price, or a price premium, paid for the Sugar-Free Products.

174. Starbucks knowingly accepted and retained that benefit under circumstances making its retention, without compensating Plaintiffs and the State Subclasses for its value, inequitable.

175. Plaintiffs and the State Subclasses lack an adequate remedy at law for the restitution sought under this Count. This Count is pleaded in the alternative precisely for those members of the State Subclasses as to whom the legal remedies asserted in the preceding Counts prove


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

unavailable, and as to those persons no legal remedy exists.

176. Plaintiffs and the State Subclasses are entitled to restitution and disgorgement of Starbucks's wrongfully retained benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Nationwide Class or, in the alternative, the California, New York, and Washington Subclasses, respectfully request that the Court enter judgment in their favor and against Starbucks as follows:

A. Certify this action as a class action, certifying the Nationwide Class in the first instance under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) or, in the alternative, certifying each State Subclass under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3); appointing Plaintiffs as class representatives, and appointing the undersigned counsel as class counsel;

B. Enter a declaratory judgment that Starbucks's naming and marketing of the Sugar-Free Products as "Sugar-Free" is false, deceptive, and unlawful;

C. Enter a permanent injunction enjoining Starbucks from naming or marketing any beverage using the term "Sugar-Free," or any comparable term, in any channel, unless that beverage in fact contains no sugar;

D. Award Plaintiffs and the Nationwide Class or, in the alternative, the State Subclasses restitution and disgorgement of all amounts wrongfully obtained by Starbucks as a result of the conduct alleged herein;

E. Award Plaintiffs and the Nationwide Class or, in the alternative, the State Subclasses actual, compensatory, statutory, and/or multiplied damages in an amount to be proven at trial, to the extent available under applicable law;

F. Award Plaintiffs and the Nationwide Class or, in the alternative, the State Subclasses punitive damages to the extent available under each Subclass's respective state law;

G. Award Plaintiffs and the Nationwide Class or, in the alternative, the State Subclasses their reasonable attorneys' fees and costs of suit, to the extent available under each Subclass's respective state law;



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

H. Award pre-judgment and post-judgment interest as allowed by law; and

I. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the Nationwide Class or, in the alternative, the State Subclasses, hereby demand a trial by jury on all issues so triable.

DATED: October 2, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *<u>/s/ Steve W. Berman</u>*
Steve W. Berman (WSBA No. 12536)
By: *<u>/s/ Shelby R. Smith</u>*
Shelby R. Smith (WSBA No. 31377)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: shelby@hbsslaw.com

Jennifer Kraus-Czeisler*
Todd McClelland*
Christopher Hurld*
STERLINGTON PLLC
530 Fifth Avenue, Suite 804
New York, NY 10036
Telephone: (212) 433-2993
Email: todd.mcclelland@sterlingtonlaw.com
Email: jen.czeisler@sterlingtonlaw.com
Email: christopher.hurld@sterlingtonlaw.com

*Attorneys for Plaintiffs and Proposed Class*

**pro hac vice* forthcoming